IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 07 C 1977 |
| v. ) | (03 CR 866-2) |
| ) | |
| JEROME COLEMAN ) | Suzanne B. Conlon, Judge |
| ) | |

## MEMORANDUM OPINION AND ORDER

Jerome Coleman was convicted of conspiracy to possess and possession of cocaine with intent to distribute, as well as theft of government property. The Seventh Circuit affirmed his conviction, but remanded for reconsideration of Coleman's sentence under *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005). *United States v. Gougis*, 432 F.3d 735, 738-39 (7th Cir. 2005). On remand, this court confirmed it would impose the same sentence whether the sentencing guidelines were advisory or mandatory. The Seventh Circuit affirmed Coleman's sentence. *United States v. Coleman*, 175 Fed. Appx. 756, 757 (7th Cir. 2006). Coleman challenges his conviction and sentence under 28 U.S.C. § 2255, alleging ineffective assistance of counsel. For the following reasons, Coleman's § 2255 motion is denied.

## BACKGROUND

The facts are drawn from the *Gougis* opinion that affirmed Coleman's conviction, unless otherwise noted. Coleman was caught in a government sting operation designed to combat criminality among law enforcement officers. The sting relied on an informant, Jacques Polk, a Chicago Housing Authority police officer who agreed to cooperate with the FBI. As part of the sting, Polk recruited Raymond Grady, a Cook County sheriff's deputy, to help him steal from

undercover FBI vehicles purportedly belonging to drug dealers. After participating in two thefts, Grady and Polk discussed including others in their crimes. Grady suggested Coleman, his fellow deputy sheriff.

Polk and Grady spoke with Coleman regarding plans for their next heist. Polk said that his "guy" had arranged another theft and that the targeted car would contain cash and "a brick" of cocaine. The three met that evening, and Polk drove them to a movie-theater parking lot. Polk indicated that a red Chevrolet Caprice parked there was the targeted drug dealer's car. In fact, the car was an FBI vehicle containing $12,000 in cash and a kilogram of sham cocaine. Grady broke into the car while Coleman acted as lookout. The three men then searched the vehicle. Grady and Polk found the cash and sham cocaine. Polk told Grady and Coleman that he would give his "man" the cocaine, and the men split the cash: $5,000 each for Polk and Grady and $2,000 for Coleman.

At trial, the government's evidence included recordings of conversations between Polk, Grady, and Coleman. A jury found Coleman guilty of conspiracy and attempt to possess more than 500 grams of cocaine, as well as theft of government property.

At sentencing, Coleman objected to a two-level enhancement for participating in a felony in which a firearm was involved. Sentencing Tr. at 4. But the court applied the enhancement, finding Coleman knew or should reasonably have foreseen that he or one of his co-conspirators would carry a firearm during the offense given that (1) Coleman, Polk and Grady were police officers and likely to be armed; (2) Coleman and Grady intended to steal from a presumably dangerous drug dealer who might return to catch them in the act; (3) Grady admitted he carried a gun during the theft; (4) Grady believed Coleman carried a firearm during the theft,

having seen a holster on his belt; and (5) when Polk asked Coleman on the day of the crime what he was "working with," Coleman replied, "A Ruger." *Id.* at 4-8; Mem. in Support at 16.

On appeal, Coleman challenged his sentence, arguing the government failed to prove he knew the theft would involve drugs. The Seventh Circuit rejected that challenge, in part because "the pretheft conversation between Polk, Grady, and Coleman . . . sufficiently established Coleman's knowledge that the proposed scheme involved drugs as well as money," and that the trial evidence amply supported his conviction on the two drug-related counts. *Gougis*, 432 F.3d at 745-46.

## DISCUSSION

### I. Legal Standards

Under § 2255, a federal convict can move to vacate, set aside, or correct his sentence if he has suffered a constitutional injury or if his trial resulted in a "complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). When deciding whether to grant a § 2255 motion, the court must draw all reasonable inferences from the evidence in a light most favorable to the government. *Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992). A defendant may raise an ineffective assistance of counsel claim in a § 2255 motion whether or not he raised the issue on appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Coleman must pass an arduous test to prevail on an ineffective assistance claim. He must show his counsel's performance was so deficient that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deference is afforded an attorney alleged to have been ineffective because of the strong

3

presumption his conduct was reasonable. *United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002). Coleman must proffer evidence that overcomes that presumption; he cannot merely second guess his attorney's decisions. *Strickland*, 466 U.S. at 689. And Coleman must affirmatively prove he suffered prejudice, an actual adverse effect, as a result of his attorney's error. *Id.* at 693.

**II. Analysis**

**A. Alleged Failure to Review Presentencing Investigation Report**

Coleman's initial *pro se* brief advanced multiple arguments; his reply by appointed counsel abandons all but two. First, Coleman claims his trial and appellate attorney, Kent Carlson, was ineffective because he failed to review and discuss the Presentence Investigation Report ("PSI") with Coleman. Coleman asserts he never received a copy of his PSI. The government responds these assertions are false, rebutting them with Carlson's affidavit. Carlson attests he discussed the PSI with Coleman three times before sentencing. Carlson Aff. ¶ 10. Carlson attests he: (1) reviewed the PSI with Coleman "in detail" on February 16, 2004; (2) filed Coleman's objections to the PSI on February 20; (3) met with Coleman to discuss those objections again on February 21; and (4) spoke with Coleman about the PSI before his sentencing on February 27. *Id.* ¶¶ 8-9. Nevertheless, Coleman's allegations raise a disputed issue of fact: whether he and Carlson reviewed the PSI together.

But an evidentiary hearing is not necessary because Coleman fails to establish resulting prejudice. Coleman asserts he was prejudiced by his inability to review the PSI for two reasons: (1) he was unable to challenge the reliability of conflicting statements Grady made regarding the use of firearms during the theft, and (2) he was unable to challenge a report noted in the PSI that Coleman threatened Grady in prison. It is clear Coleman was not prejudiced by a failure to

4

contest the reliability of Grady's statements because he raised that very issue in his written objections to the PSI. Objections to PSI at 3-8, Dkt. No. 159 (Feb. 20, 2004).

Nor does Coleman provide any evidence to show he was prejudiced by a failure to challenge the PSI's report that he threatened Grady. Coleman claims this part of the PSI prejudiced him at his bond hearing and during trial. Mem. in Support at 18. But the bond hearing and trial occurred *before the PSI was prepared*. Coleman also claims the Bureau of Prisons denies him access to rehabilitation programs because the PSI reports he threatened Grady. But Coleman provides no evidence to support that claim. Coleman further contends the PSI's mere mention of the incident is prejudicial because it could conceivably affect him in the future. Reply at 4. Speculation does not satisfy *Strickland*'s prejudice requirement. *Strickland*, 466 U.S. at 693; *see also United States v. Kovic*, 830 F.2d 680, 691-92 (7th Cir. 1987) (rejecting a § 2255 ineffective-assistance claim based on inaccuracies in presentencing report where court did not rely on those inaccuracies in sentencing).

### B. Failure to Challenge Firearm Sentencing Enhancement on Appeal

Coleman contends Carlson provided ineffective assistance because he decided not to challenge Coleman's firearms sentencing enhancement on appeal. At sentencing, Carlson argued that the firearm enhancement was inappropriate because the supporting evidence was unreliable. Sentencing Tr. at 4. He argued Coleman's admission that he was "working with" a Ruger was ambiguous in its proper context. *Id.* He argued that the circumstances surrounding the crime did not make it reasonably foreseeable that Coleman's accomplices would carry firearms. *Id.* at 5. And he attacked the credibility of statements Grady made indicating a gun was present during the offense. Objections to PSI at 3-8, Dkt. No. 159 (Feb. 20, 2004). Coleman now contends these

failed arguments were "dead-bang winner[s]" on appeal. Mem. in Support at 33-34. He argues that had Carlson raised these issues, the Seventh Circuit would have reversed this court's imposition of the firearm enhancement.

The government responds that because the firearm enhancement was supported by the evidence, Carlson's decision not to raise this issue on appeal was reasonable. Carlson attests he chose not to challenge the firearms enhancement on appeal because (1) it was factually supported, (2) he thought raising multiple issues on appeal would decrease Coleman's chances of success, and (3) the Seventh Circuit would review the findings underlying the enhancement for clear error. Carlson Aff. ¶¶ 15, 17.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Carlson clearly conducted a thorough investigation of the law and the facts relevant to the firearms sentencing enhancement because he raised multiple arguments against the enhancement in his objections to the PSI. The fact that Carlson raised these arguments unsuccessfully at sentencing indicates his decision not to raise them on appeal was reasonable and strategic, not due to sloth or oversight.

### C. Request for Evidentiary Hearing

Coleman requests an evidentiary hearing to establish Carlson's ineffectiveness. He is not entitled to an evidentiary hearing under § 2255 if "the motion and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255. Nor is a hearing necessary "if the petitioner makes conclusory or speculative allegations rather than specific factual allegations." *Gallo-Vasquez v. United States*, 402 F.3d 793, 797 (7th Cir. 2005) (quoting Daniels v. United States, 54 F.3d 290, 293 (7th Cir. 1995)). Coleman fails to provide any

6

evidence he was actually prejudiced by Carlson's alleged failure to review the PSI with him. Carlson's decision not to challenge the firearm sentencing enhancement was a reasonable and strategic one. Accordingly, Coleman fails to present facts sufficient to warrant an evidentiary hearing.

ENTER:

Suzanne B. Conlon
United States District Judge

January 29, 2008